## T. V. STEWART V. NICHOLS & HARALSON.

Decided June 11, 1904.

**Trespass—Venue.**

While defendants' servants were lawfully engaged in driving down an iron pin in a street for the purpose of moving a house. a splinter flying off from the pin, or the hammer used in driving it, struck plaintiff, a bystander, in the eye. The evidence excluded the idea that the injury was intended, or that the act was known to be dangerous and liable to cause such an injury. Held, that the act causing the injury was not a trespass within the meaning of the statute giving jurisdiction in a county wherein a trespass is committed, although the defendants reside in another county.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett. .

*Stuart & Bell,* for appellant.

*Culp & Giddings,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellant brought this suit in the District Court of Cooke County against appellees to recover damages on account of personal injuries. Appellees, who were residents of Dallas County, claimed the privilege of being sued in that county, which plea, after appellant had introduced his testimony, was sustained and the suit dismissed, the court at the instance of appellees instructing the jury to return a verdict in their favor on that issue.

The facts relied on by appellant to show a trespass in Cooke County were thus stated in his testimony: "I am the plaintiff in this cause. On the 4th day of August, 1900, I was going east on California Street, in the city of Gainesville, Cooke County, Texas. Said California Street was then and is now the principal street and thoroughfare in said city of Gainesville, which was then a city of about eight or ten thousand people. The people were constantly going in both directions on said California Street on said August 4, 1900. Said street was constantly used by the public as a thoroughfare on said August 4, 1900. As I was going east on said California Street on said August 4, 1900, when I got just a little east of the Turner cottage, which is on the north side of California Street, I was stopped by chains that had been stretched across the street by defendants, Nichols & Haralson, who were moving a house for E. B. Blanton. Said house was just north of said street and they were pulling or getting ready to pull the same across said street, and said chains were attached to and extended from said house, which was just north of said California Street, to the south side of said street. The chains were stretched clear across the street, and prevented my going further. I stopped and stood there for a few minutes and finally leaned against the telephone pole that is on the north side of California Street, and would be in Lindsay Street if said Lindsay Street were extended north. California Street runs east and west, and Lindsay Street runs

north and south, terminating at or in California Street. While I was standing against said telephone pole, defendants or their employes were driving an iron or steel pin into California Street, and three or four men were hitting said iron or steel pin with hammers; one hit right after another, and they were striking very fast and hurriedly. I was standing there against said telephone pole, and I can not say whether they saw me or not, but I was standing there and also were a number of other people, and there was nothing to prevent them from seeing me or the other people who were standing there. While said pin was being hit, as above shown, a piece of it was knocked off and went through the air into my eye. I was dazed and my eye commenced bleeding. The piece of iron or steel that went into my eye was about a quarter of an inch wide and about one-half or three-fourths of an inch long. It was irregular and jagged on the sides. When I was hit, I was about thirty feet from the men who were driving the pin. * * * I was standing there against the pole watching them moving the house, and was interested in the striking of the pin. While I had my eyes on them, the men were not looking at me but were looking at what they were doing. I do not know whether the piece that struck me came from the pin or from the hammer."

It is not contended that appellees acted unlawfully in moving the house across the street, or that appellant was entitled to have the jury pass upon the issue of fraud made against the allegations of his petition by the venue plea.

Therefore, treating the question as it has been presented in the briefs, we are of opinion that the case made by the testimony quoted above was not one of "trespass" under our venue statute as that word has been interpreted by the following decisions of our Supreme Court: Connor v. Saunders, 81 Texas, 633, 29 S. W. Rep., 1142, and cases there cited; Bicker v. Shoemaker, 81 Texas, 22; Austin v. Cameron, 83 Texas, 351; Wettermark v. Campbell, 56 S. W. Rep., 331 (333). We assume, as before indicated, that the work in which appellees were engaged at the time appellant was injured was lawful and that it was being done in a lawful manner. If, then, they negligently failed to provide suitable tools or implements with which to do the work, or negligently failed to use them in a suitable manner, as claimed by appellant, this was but an omission of duty and not a trespass, as we understand the opinions cited. True, in a sense the striking of the pin in a negligent manner, if negligence there was, was something more than a mere act of omission, but the circumstances attending the act utterly exclude the idea that injury to anyone was intended, or that the act was known to be dangerous and liable to result in injury to others. At best the case was one in which a lawful act was done in a negligent manner merely, which we do not understand to be a trespass.

*Affirmed.*

Writ of error refused.